## Short *v.* City of Carbondale, Appellant.

*Negligence—Municipalities—Roadways—Obstructions in gutter —Footwalk across gutter—Contributory negligence—Judgment for defendant.*

1. The duty which the law imposes upon a municipality with respect to the maintenance of highways is only to exercise ordinary care to see that they are safe for travelers. A municipality is not bound to fix and maintain the highway for use and travel in its entire width, nor is it an insurer of the safety of passengers upon its highways.

2. Ditches or gutters, with walks built across them for the use of pedestrians are of such common necessity and general use that the ditches cannot be considered defects in the highways, nor can the walks built over them be regarded as obstructions.

3. In an action against a municipality by a widow to recover damages for the death of her husband, it appeared that deceased was driving a team at a trot, with the wheels of his wagon in the gutter of a highway, when the wheels struck a flagstone extending across the gutter from the street to the sidewalk and so placed to prevent pedestrians from falling into a manhole in the gutter. The flagstone was in plain view of one approaching from a point at least seventy-five feet away. As a result of the collision, the deceased was jolted from the wagon, receiving injuries which resulted in his death. *Held,* (1) there was no evidence of negligence on the part of defendant; (2) that the deceased was guilty of

contributory negligence;   (3) that judgment should be entered for the defendant.

Argued Feb. 23, 1915.   Appeal, No. 223, Jan. T., 1914, by defendant, from judgment of C. P. Lackawanna Co., March T., 1913, No. 431, on verdict for plaintiff, in case of Annie Short v. City of Carbondale.   Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband.   Before STAPLES, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,500 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were (1) in refusing to direct a verdict for defendant and (8) in refusing to enter judgment for defendant n. o. v.

*A. A. Vosburg,* with him *J. B. Jenkins* and *J. F. Reynolds,* for appellants.

*Everett Warren,* with him *M. S. Kaufman* and *C. B. Little,* for appellees.

OPINION BY MR. JUSTICE POTTER, May 26, 1915:

In this action of trespass the plaintiff sought to recover damages for the death of her husband, which it was alleged resulted from the negligence of the defendant.   On the morning of December 28, 1912, Clair Short, the husband of the plaintiff, was driving an empty coal wagon down Fallbrook street, near Fairview street, in the City of Carbondale.   At that point, the street slopes toward the east at a considerable grade.   It appears that the street was graded and curbed, and that the city had at intervals placed manholes at the sides of the street, to take care of surface water.   These manholes were covered

with flagstones, some three feet long, extending over the gutter from the curb to the graded surface of the street. Short turned aside from the center of the roadway, in order to pass a team which he met, and his wagon wheels, on the right hand side, slued or slipped into the gutter. His horses were at the time trotting, and he continued to drive at a trot with his wheels in the gutter for a distance shown by the evidence to be about seventy-five feet, until the front right wheel struck a flagstone extending across the gutter, over one of the manholes. He was thrown to the ground from the high seat, upon which he was sitting in the wagon, and sustained injuries resulting in his death. In plaintiff's statement she averred that the city was negligent in permitting the flagstones to project over the curb line into the street, and that this negligence was the proximate cause of the injury to her husband. The first question here presented for consideration is, therefore, whether the city can be charged with negligence in covering the manholes in the gutter with flagstones, as it did. The testimony showed that the roadway of the street was about twenty-four feet in width; that the flagstones extended from the curb into the roadway some three feet, and that the stones were more than five inches thick. The distance from the bottom of the gutter to the top of the flagstones, at a point next to the curb line, was about thirteen inches. The stone was in plain sight of the driver of the wagon, as he approached it, for at least seventy-five feet, and during that distance the wagon was driven with its right hand wheels in the gutter, with the horses trotting, until the front wheel struck the stone. There was a considerable grade at the point where the accident occurred, and the manhole was placed in the gutter as a catch basin into which the water running from above might flow. Originally it was covered by a grating, but this did not admit a sufficient flow of water, and it was, therefore, removed, and the manhole covered with flagstones for the protection of the public. In Kelchner v. Nanticoke Boro., 209 Pa. 412, we said (p.

419) : "The duty which the law imposes upon a municipality is only to exercise ordinary care to see that the highway is safe for travelers. For want of this it is liable, but for nothing more." In the case at bar it is difficult to see wherein there was any lack of ordinary care. The flagstones were placed over the manhole, for the purpose of preventing travelers, either on the sidewalk or in the street, from getting into the open hole. It would seem to be rather extreme, to hold that the city could fairly have anticipated that the driver of a coal wagon, which had slipped into the gutter at the side of the road, would continue with the right hand wheels running therein, for a distance of seventy-five feet, with his horses all the time on a trot, and would then bump into a flagstone, where it was at least eight inches above the bottom of the gutter. The thickness of the stone was not material, as the same result would probably have occurred, had the manhole been covered with an iron casting, one inch in thickness. The condition, which existed at the point in question, was one frequently found in the streets of all municipalities, at ordinary crossings, or where it is necessary to make provision by which vehicles may cross the gutter and sidewalk, to enter a driveway or stable, or warehouse. It is a usual thing to cover the gutter with a wooden, or iron, or stone covering. Hardly a municipality in the State is without such arrangements. In the present case the purpose in covering the gutter was not to provide means of access for vehicles to the sidewalk, but it was intended to prevent passersby from falling into the manhole. The result, however, in so far as the method of construction was concerned, was the same. It is also a common thing to place flagstones, or an iron or a wooden covering over gutters at street crossings. In either case if a wagon, whose wheels are running in the gutter, drawn by horses at a trot, should come in contact with such an obstruction, the natural result will be to produce just such a jolt, as occurred in the case now under consideration. Yet we do not think it can

fairly be held that a municipality is guilty of negligence, in maintaining a covering over a gutter, for the purpose of providing means of access to a stable or driveway, or to afford convenience for pedestrians. A case arising upon a similar state of facts was that of Loberg v. Amherst, 87 Wis. 634. There a ditch or gutter, at the side of the highway was crossed by a walk in the nature of a bridge. Plaintiff's horses were frightened, and dragged the buckboard in which plaintiff was riding, from the center of the highway into and along the gutter, until it struck the cross walk, throwing the plaintiff out and injuring him. The trial court directed a verdict for defendant, and on appeal the judgment was affirmed. It was said (p. 640) : "Ditches or gutters with walks across the same for the use of pedestrians, are of such common necessity and general use that they cannot be considered as defects or obstructions in the highway. As it has been repeatedly held, the town is not bound to fit and maintain the highway for use and travel in its entire width, nor is it an insurer of the safety of the persons and property of travelers along it. Its liability is founded only upon some fault or negligence on the part of the town, and a finding that the cross walk or bridge in question was a defect or obstruction......would be manifestly without proper evidence to support it." In Kieffer v. Hummelstown Boro., 151 Pa. 304, it was shown that a stone pile was left at the side of the street, which extended into the gutter, and the roadbed, but ample width was left for the purpose of public travel. It was held that under these circumstances the borough was not to be regarded as negligent, citing Jackson Township v. Wagner, 127 Pa. 184, and Worrilow v. Upper Chichester Township, 149 Pa. 40. These were cases of injury from runaway horses. In the present instance, the slipping or skidding of the wagon may be considered as analogous to a runaway, in that it was something which the borough could not fairly have been held to anticipate, or guard against.

But aside from this; if for the sake of the argument, we should assume that the action of the city in placing the flagstones over the gutter, may be regarded as negli-gent, even then there would be no escape from the conclusion that Mr. Short was himself guilty of negligence which contributed to the happening of the accident. He drove his team at a trot, down a rather sharp grade, with the right hand wheels running in the gutter, for a distance of at least seventy-five feet, before he ran against the flagstone, which extended across the gutter. When his wheels were in the gutter, he was traveling in a place not intended for the use of the public, in that way. The gutter was provided for the purpose of carrying off the water from the highway. Outside of the gutter the roadway was amply wide for the purpose of public travel. If by reason of the snowy surface of the roadway, the wagon wheels slipped into the gutter, while meeting and passing another team, then the dictates of ordinary prudence required that Mr. Short should have stopped his horses, or at least have checked them, and made them go slowly until he had regained his proper position on the highway. Instead of that, the evidence shows that with the right hand wheels running in the gutter, he permitted his horses to continue at a trot, until the front wheel struck the flagstone, with most disastrous consequences to himself. There is nothing in the evidence to indicate that the horses were at the time in any way beyond control. The accident occurred in the daylight, in the forenoon of a pleasant winter day, upon a street with which, as the testimony indicates, Mr. Short must have been familiar. Evidently he was at fault in driving so rapidly at the time, and under the circumstances. It is impossible to avoid the conclusion, that his action in so doing contributed largely to the injury which resulted.

The first and eighth assignments of error are sustained, and the judgment is reversed, and is here entered for the defendant.